1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

         Plaintiff,

    v.

MANDY NATCHI YAGI and PETER WONG,

         Defendants.

_____/

No. CR-12-0483 EMC

**FINAL PRETRIAL CONFERENCE ORDER**

## I.   **TRIAL DATE & LENGTH OF TRIAL**

      Jury selection and trial shall commence on November 1, 2013, at 8:30 a.m and will go until 4:30 p.m.  Other trial days shall last from 8:30 a.m. to 2:00 p.m.  Trial is dark on Thursdays, absent further order, as well as November 8, 2013 and November 11, 2013.

## II.   **PROCEDURE FOR EXHIBITS AT/DURING TRIAL**

A.    No later than the end of each trial day, counsel shall inform opposing counsel of which exhibits (including demonstrative evidence), if any, he or she intends to introduce during the next trial day and, if necessary, with respect to which sponsoring witness.  If any such exhibits are still objected to, both counsel shall notify the Court after the jury is excused for the day and shall identify the exhibits at issue and the objections.  The Court will then schedule a conference that afternoon or the following morning to resolve the dispute.

B.    At the end of each trial day, counsel shall also provide opposing counsel with a tentative preview of the exhibits he or she intends to introduce during the trial day after next.  Parties are directed to make a good faith effort to ensure such previews are as accurate as possible.

C. With respect to exhibits to be used on the first day of trial, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce by Wednesday, October 30, 2013, at 5:00 p.m. If any such exhibits are still objected to, both counsel shall notify the Court by October 31, 2013, at 2:00 p.m., and shall identify the exhibits at issue and the objections. The Court will then address the dispute on the first day of trial, November 1, 2013, before any testimony begins.

D. If a party intends to use a projector or other equipment to show an exhibit (or demonstrative) to the jury, that equipment shall be set up and ready for use by 8:30 a.m. each day. The parties should immediately file with the Court, if necessary, administrative requests to bring projectors and/or other equipment to the courthouse for use at trial.

### III.   PROCEDURE FOR WITNESSES AT/DURING TRIAL

A. Each party shall be prepared, during its case in chief or any rebuttal, to present its next witness. At any time, if the party whose case is being presented is not prepared to present its next witness, that party shall be deemed to have rested that portion of its case. No further witnesses shall be permitted by the party who has so rested in that portion of the case (*e.g.*, case in chief or rebuttal).

B. Counsel are expected to cooperate with each other in the scheduling and production of witnesses, including informing one another of witness order. At the end of each trial day, Counsel shall give opposing counsel notice of which witnesses will be testifying on the following day. At that time, counsel shall also provide a tentative preview of witnesses who are expected to testify the day after next. Witnesses may be taken out of order if necessary. Every effort shall be made to avoid calling a witness twice (as an adverse witness and later as a party's witness).

C. Only one lawyer for each party may examine any single witness.

D. If a witness is testifying at the time of a recess or adjournment and has not been excused, the witness shall be seated back on the stand when the Court reconvenes. If a new witness is to be called immediately following recess or adjournment, the witness should be seated in the front row, ready to be sworn in.

2

E.  Counsel shall refrain from eliciting testimony regarding any undisputed facts as set forth in any stipulation filed with the Court. The Court may read to the jury such undisputed facts at appropriate points in the trial.

F.  Witnesses shall be excluded from the courtroom until completion of their testimony.

## IV.  OTHER PROCEDURES AT TRIAL

A.  To make an objection, counsel shall rise, say "objection," and briefly state the legal ground (*e.g.*, hearsay or irrelevant). There shall be no speaking objections or argument from either counsel unless requested by the Court.

B.  Bench conferences, or the equivalent of sidebars, will not be permitted absent truly extenuating circumstances. Disputes regarding exhibits shall be resolved as set forth in Part II, *supra*. Any other disputes or problems should be addressed either before the trial day commences, at the end of the trial day, or during a recess, if necessary.

## V.  STIPULATIONS OF FACT

At the pretrial conference, the Court expressed concern that the parties had not been able to reach stipulations as to many of the factual issues in this case to which there does not appear to be any dispute. The Defendants acknowledged that further stipulations may be possible, but that, to date, logistics have not permitted the parties to meet and confer regarding these stipulations. The Court expects the parties to stipulate to those matters (including authenticity and chain of custody) over which there is no reasonable basis for dispute. Accordingly, the parties are ordered to meet and confer as to the proposed stipulations offered by the government. The parties are further ordered to file a joint statement no later than Monday, October 21, at 10:00 a.m. addressing those facts to which the parties have stipulated. To the extent that there are items on the government's list of proposed stipulations to which the Defendants refuse to stipulate, the joint statement shall state, in detail, their reasons for disputing the matter.

If sufficient progress is not made, a further pretrial conference shall be held on Tuesday, October 22, 2013 at 2:30 p.m.

# VI.  GOVERNMENT'S MOTIONS IN LIMINE

A.    Motion in Limine No. 1:  Defendants' Prior Statements

The government seeks an order barring Defendants Mandy Yagi and Peter Wong from introducing at trial their prior out-of-court statements.  The government argues such statements are inadmissible hearsay if offered by defendants.  (Dkt. No. 120).  The government's motion does not specify the proposed exhibits or statements to which it objects, but rather generally states any such statement are inadmissible hearsay and that the "prior consistent statement" doctrine is inapplicable.  (*Id.* at 2-3).

The government is correct that, traditionally, the rule against hearsay prohibits defendants from introducing into evidence their prior out-of-court statements.  *See, e.g.*, *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000).  However, the hearsay rule is only applicable to the extent the statement in question is offered for the truth of the matter asserted.  *See, e.g.*, *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001); *In Suk Kim v. Vilsack*, No. C 10-2101 CW, 2012 WL 368477, at 2 n.3 (N.D. Cal. Feb. 3, 2012) ("Further, Dr. Esteban's statement that the staff members made complaints are not offered to prove the truth of the matter contained in the complaints, but rather as evidence of his motive for rejecting Plaintiff for the promotion.").  Further, the Court's ability to rule on this motion is hampered by the government's failure to specifically identify those exhibits to which it was objecting.  However, in opposing the government's motion, Defendant Wong has cited to examples of exhibits he intends to use at trial which represent his prior statements.  To provide guidance to the parties, the Court will rule on these exhibits.

Defendant has proffered exhibit Wong DD, which consists of a number of documents relating to Mr. Wong's August 2011 application and interview for the position of Estate Property Supervisor.  These emails reflect Mr. Wong's belief that he was treated unfairly during the interview process, that county personnel had engaged in misconduct, and that he felt he was being "discriminated against and treated in a disparaging manner."  The emails reflect Mr. Wong's belief (at the time he wrote the emails) that he was being discriminated against or harassed at work.  Similarly, Defendant has proffered exhibit Wong EE, consisting of a number of emails Mr. Wong

sent to Sharon McAleavey in November 2011 in which he raises concerns regarding the "outsourcing" or reduction of his job duties. Finally, Defendant has proffered exhibit Wong GG which consists, in part, of emails Mr. Wong sent his attorney and the family of a decedent discussing his replacing the County of San Mateo as administrator of a decedent's estate.

These statements are relevant as the government appears to argue that the Defendants left their positions with San Mateo County in response to the either (a) the increased supervision and management controls in the San Mateo Office of Aging and Adult Services (Dkt. No. 66, at 15) or (b) the initiation of the San Mateo Sheriff's Office's investigation (Dkt. No. 114, at 3 ("The Sheriff's Office opened an investigation. About three weeks after the investigation began . . . Wong abruptly resigned his county employment. . . . Yagi retired from her position with the county effective on or about December 6, 2011)). Accordingly, the government appears to be implying that the resignations are indicative of Defendants' consciousness of guilt. As a result, evidence that Mr. Wong felt harassed or mistreated in his job, felt his job duties were being taken away from him, or that he was planning to become a private administrator would tend to offer an alternative explanations for his resignation, rebutting the government's proffered inferences.

The Court finds that these statements are not hearsay as they are not being offered for the truth of the matter asserted, but rather as circumstantial evidence of Defendant Wong's state of mind. These statements will not be used to demonstrate that Defendant Wong was in fact discriminated against, harassed, or that his job duties had been "outsourced," but rather as evidence from which the jury can infer either Defendant Wong's state of mind regarding his job or his motive for resigning – an issue relevant to rebut the government's inference regarding his resignation. *See United States v. Salameh*, 152 F.3d 88, 112 (2d Cir. 1998) ("'Where, as here, the statement is offered as circumstantial evidence of [a defendant's] state of mind, it does not fall within the definition given by Rule 801(c); because it was not offered to prove the truth of the matter asserted.'"); *see also Atlantic-Pacific Const. Co., Inc. v. NLRB*, 52 F.3d 260, 263 (9th Cir. 1995) ("An out of court statement may be admitted as circumstantial evidence of the declarant's state of mind . . . ."); *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 421 (S.D.N.Y. 2011) ("Out-of-court

statements are not hearsay if offered to show the context within which parties were acting, or to show a party's motive or intent for behavior.")

However, even if hearsay, the Court finds the proffered exhibits nonetheless fall under Rule 803(3)'s state of mind exception. The Ninth Circuit has acknowledged "three factors bearing on the foundational inquiry on admissibility' under Rule 803(3): contemporaneousness, chance for reflection, and relevance." *United States v. Miller*, 874 F.2d 1255, 1264 (9th Cir. 1989). Here, the exhibits proffered by Defendant Wong meet the relevance prong for the reasons stated above. Further, the contemporaneous element is satisfied insofar as the exhibits reflect his then existing feelings and state of mind. The more difficult question is Defendant Wong's opportunity to reflect. This element appears to depend on the nature and context within which the statements regarding state of mind arose. For example, in *Miller*, the Ninth Circuit found a district court did not abuse its discretion in finding that the defendant had sufficient time to fabricate an explanation to a law enforcement officer when 2 hours had elapsed. *Id* at 1264. By contrast, in *Wagner v. County of Maricopa*, 706 F.3d 942 (9th Cir. 2012), the Ninth Circuit reversed a district court's decision to not admit evidence under Rule 803(3) when the underlying statement was addressing how the declarant felt about incidents which had occurred seven days previously. *Id.* at 946.

The Court concludes that while Defendant Wong may – in a literal sense – have had an opportunity to reflect, the Court finds that in this context, the period of time does not give rise to an inference that the state of mind expressed in the exhibits is fabricated. For example, according to exhibit Wong DD, Defendant Wong received an email on Tuesday, August 23, 2011 at 1:15 p.m. at his personal email address stating he did not receive a promotion for which he applied. Defendant Wong's response email was sent the following morning at 7:40 a.m. Similarly, exhibit Wong EE includes an email Defendant Wong sent on November 6, 2011 in which he complains of job responsibilities being taken away. This email was sent following a meeting that was held earlier that day. Given the nature of the emails and the fact the relevant event which gave rise to Defendant Wong's statements from which his state of mind is sought to be inferred occurred while he was at work, the Court finds that the opportunity to reflect is minimal and that Rule 803(3)'s requirements are satisfied.

During the pretrial conference, the government argued that *United States v. Emmert*, 829 F.2d 805 (9th Cir. 1987) bars application of Rule 803(3) in these circumstances. In that case, the Ninth Circuit affirmed the exclusion of out-of-court testimony that the defendant "was scared because of the threats made by the agents." *Id.* at 810. The Court recognized that Rule 803(3) by its own provision does not apply to "statement of memory or belief to prove the fact remembered or believed." *Id.* at 809-10. As a result, the Court found this testimony was properly excluded because the testimony "would have fallen within the 'belief' category and would not have been limited to Emmert's current state of mind." *Id.* From this the government appears to argue that any statement which includes references to the reason underlying the declarant's state of mind falls outside of Rule 803(3)'s purview.

The Court, however, does not read *Emmert* so broadly or Rule 803(3) so narrowly. In *Wagner v. County of Maricopa*, plaintiff proposed to testify about the statements her decedent brother made to her about an alleged assault that occurred in the Maricopa County jail. 706 F.3d at 946. The decedent made these statements to her after he had been released from the jail. The district court excluded the testimony as hearsay. The Ninth Circuit found that the district court abused its discretion in excluding this testimony. Specifically, the Court found that testimony of the plaintiff along the following lines should have been admitted:

> He [her brother] felt he was being raped. He felt one of the officers attempted to put his penis in his mouth and that he had to keep his mouth so tight that he bruised his outer lips to avoid being accosted that way.
>
> He was sure they were going to rape him. He hollered to people. He was sure that all the inmates heard him saying who he was and that he was being raped and please help him. And they were, you know, have [sic] a party at his expense . . . .

*Id.* at 946. The Court stated, "[i]ndisputably, Wagner could have testified at trial about the impact the jail incident had on Vogel, his mood following the incident, how disturbed he seemed, *and even what he thought happened to him during the incident*, all without putting inadmissible hearsay before the jury." *Id.* (emphasis added). The Court recognized that "[n]one of this testimony would have been put forth in order to establish the truth of what he had said," and thus distinguished *Emmert*. *Id.* at 947.

1    As in *Wagner*, exhibits Wong DD, EE, and GG are admissible as indicative of Defendant's

2    state of mind at the time the statements were made.  They are not being introduced to prove the truth

3    of the matter asserted (that Defendant was being harassed, mistreated, or the like).  The Court will

4    upon request issue a limiting instruction, instructing the jury that the emails in question are relevant

5    only to the extent they are probative to Defendant Wong's state of mind and not for the truth of the

6    matter asserted.  *See United States v. Day*, 591 F.2d 861 (D.C. Cir. 1978) ("[S]uch statements

7    invariably contain some extraneous factual elements which necessitate limiting instructions to

8    ensure that the statements are considered solely on the issue of the declarant's mental state and not

9    for the truth of the matter asserted.").

10    As a result, whether deemed as non-hearsay or as state of mind evidence under Rule 803(3),

11    the government's motion is **DENIED** as to exhibits Wong DD, EE, and GG with the limitations

12    discussed above.  The parties are ordered to meet and confer in light of this Court's ruling to

13    determine if there are any remaining exhibits constituting prior statements by the Defendant to

14    which the government objects.  To the extent there are any remaining objections, the government

15    shall file a list of the *specific* exhibits to which it objects and a detailed statement of the bases for

16    this objection by Wednesday, October 23, 2013.  The government shall not use these objections as a

17    vehicle for seeking reconsideration of this order.  Defendants shall then file any response to these

18    objections by Friday, October 25, 2013at 5:00 p.m.  The Court notes this ruling is without prejudice

19    to objections based on Rule 403 as to other additional exhibits.

20    B.    Motion in Limine No. 2:  References to Punishment

21    The government seeks to exclude any references to the potential punishment or sentencing of

22    the Defendants during the trial.  (Dkt. No. 121).  The Defendants do not oppose this request, but

23    notes this exclusion should apply equally to the government.  The Court agrees.  The government's

24    second motion in limine is therefore **GRANTED**.

25    C.    Motion in Limine No. 3:  Defendants' Medical Evidence

26    The government seeks to preclude the Defendants from offering medical evidence at trial,

27    arguing that it is irrelevant or, in the alternative, that its probative value is substantially outweighed

28

8

by the risk that the jury will be swayed by sympathy. (Dkt. No. 122, at 1-2).[1] The Court disagrees. As discussed above, to the extent the government has (and continues) to argue that Defendants "abruptly" left their job in response to increased county oversight or a law enforcement investigation, evidence rebutting this inference is directly relevant.

Accordingly, medical evidence that tends to show Defendants left their positions for health reasons is relevant and the probative value is not substantially outweighed by the risk of unfair prejudice. For example, Defendant Wong's medical records reveal that in September 2011, prior to the initiation of the criminal investigation, Mr. Wong told his doctor that he was depressed and stressed because of work as a result of a recent move. The Doctor then states that "We discussed medication today and he would like to avoid this if possible. We will have him stop work and redouble his efforts with his therapist and see us back in 2 weeks." Because this evidence tends to suggest an innocent reason for Mr. Wong's resignation from his position, it is relevant to rebut the government's inference that Mr. Wong's "abrupt" resignation is a sign of a consciousness of guilt. These records were reasonably close in time to Defendant Wong's resignation and thus have probative value.

Similarly, Ms. Yagi's medical records reveal that a number of diagnostic tests for potentially serious conditions such as breast cancer were run in the months leading up to her decision to resign. These records are therefore relevant to provide an alternative explanation for her resignation and this relevance is not substantially outweighed by the risk of unfair prejudice to the government. *See* Fed. R. Evid. 403.

The government argues in reply that Defendants impermissibly intend to use their doctors as experts to show that not only was Defendant Wong suffering from depression (and Defendant Yagi, apparently, from breast cancer), but that these medical conditions caused them to resign their positions. Insofar as Defendant Wong's doctor specifically suggested Defendant Wong leave his job

---

[1] The government inexplicably argues in its motion and reply that the defendants seek to offer medical evidence in an attempt to justify or excuse their conduct. (Dkt. No. 122, at 2). The Court is unable to find even a slight indication or inference that the defendants seek to argue justification or excuse, and the Defendants expressly disclaim any such intention. Accordingly, the Court finds the government's argument on this point frivolous.

as part of his treatment for depression, this doctor will be able to testify as to this recommendation. *See, e.g.*, *Walker v. Contra Costa County*, No. C03-3723, 2006 WL 3371438 (N.D. Cal. Nov. 21, 2006) ("A treating physician's testimony regarding observations and treatment 'are not matters outside the ken of the average juror, so Rule 702 and the disclosure obligations of Rule 26(a)(2)(A) are not triggered.'"). To the extent Defendant Yagi's doctors made a similar contemporaneous recommendation as part of her course of treatment, they may testify as to that fact. If not, Defendant Yagi will be limited to having her doctors testify as to the nature of Defendant Yagi's diagnosis and treatment. It will then be up to her attorney to argue the inferences the jury should reach from that. Neither Defendant Wong's nor Defendant Yagi's doctors will be permitted to opine on whether, in fact, the Defendants resigned because of health reasons, that their resignations were required for health reasons (unless so expressly stated during their treatment), that Defendants' resignation was not reflective of a guilty mind, or the like.

Finally, the Court notes that to the extent Plaintiffs seek to introduce medical records that include statements their doctors made to them (as opposed to statements they made to their doctors), such statements would not qualify under Rule 803(4)'s hearsay exclusion for statements "made for . . . medical diagnosis or treatment." *See, e.g.*, *Field v. Trigg County Hosp., Inc.*, 386 F.3d 729, 735 (6th Cir. 2004) ("[T]he hearsay exception set forth in Fed. R. Evid. 803(4) applies only to statements made by the one actually seeking or receiving medical treatment."). Accordingly, any records relating these statements would need to be qualified as business records under Rule 803(6).

Accordingly, the government's third motion in limine is **DENIED**.[2]

D.     Motion in Limine No. 4:  Sexual Harassment Allegations

The government's fourth motion in limine seeks to bar Defendants from raising or referring to any allegations of sexual harassment made by Defendant Wong against a fellow county employee. The government argues there is no credible evidence to support the claim, that Mr. Wong failed to

---

[2] The Court notes, however, that exhibit Wong V contains a number of records as far back as 2010 and as recent as this year. Not all of these records have significant probative value. The Court will entertain objections to medical records not proximate in time to Defendant's resignation.

pursue the claim while a county employee, and any relevance is substantially outweighed by the risk of unfair prejudice and confusion to the jury.

The government has provided email records showing Defendant Wong's underlying complaint and the attempts by county personnel to follow up on the complaint. Mr. Wong alleged that on September 22, 2011, during a closed-door meeting regarding Mr. Wong's work performance, a coworker told Mr. Wong that "I don't know how to not make this sound confrontational, but we are not starting off on a very good foot" and that "you and I need some bonding time." Mr. Wong reported this statement to human resources, stating that the statement made him feel "uncomfortable." Additionally, on September 30, 2011, Mr. Wong alleges that the same coworker told Mr. Wong (in front of other workers): "Well, you know what that means? If they (the law firm) can't find those documents, you're going to have to 'endure' an afternoon with me. . . . Oh, haha, just kidding, you'll find it delightful." Mr. Wong reported that these comments were "inappropriate and gave me an un easy and uncomfortable feeling."

Contrary to the government's assertion, these allegations have some relevance to this matter because they tend to rebut, like the medical records and prior statements discussed above, the government's argument as to the reason why the Defendant Wong resigned his position with the county. However, the Court finds that any probative value is substantially outweighed by the risk of unfair prejudice to the government and the risk of confusing the jury. First, The Ninth Circuit has recognized that "sexual harassment, like other forms of discrimination and personal abuse, 'deservedly carries a unique stigma in our society,' and courts, therefore should exercise caution in allowing its introduction when its probative value is relatively weak." *Ortega v. O'Connor*, 146 F.3d 1149, 1165 (9th Cir. 1998). Here the probative value of Defendant Wong's allegations are weak for two reasons because the alleged statements are, on their face, fairly innocuous and do not appear to be patently sexual in nature. Further, even though the allegations are probative to the extent they suggest Defendant Wong *believed* he was being sexually harassed, the probative nature of the allegations on this point are undermined by Defendant Wong's decision "to put this matter on the backburner for now pending resolution" of other issues.

Second, this evidence is cumulative in light of the other evidence available to Mr. Wong to show the reasons for his resignation. As discussed above, Defendant Wong will be permitted to introduce evidence showing that in the months leading up to his resignation, he felt mistreated and discriminated against at work and was suffering from depression and anxiety as a result. Defendant Wong will be allowed to use this evidence to rebut the government's assertion that he "abruptly" resigned in a way that shows a consciousness of guilt.

Finally, introduction of this evidence would likely create a "trial within a trial" as both parties attempt to establish: (1) whether the incidents occurred; (2) how they were perceived by Mr. Wong; and (3) whether Mr. Wong's subjective perception of having been sexually harassed was a genuine reaction. Such a mini-trial would create a substantial risk of jury confusion and needlessly delay the trial. *See Tennison v. Circus Circus Enter., Inc.*, 244 F.3d 684, 690 (9th Cir. 2001) (affirming exclusion of evidence under Rule 403 where the evidence "might of resulted in a 'mini trial'"). The Court finds that this risk substantially outweighs the relatively low probative value of this arguably cumulative evidence.

Accordingly, the government's fourth motion in limine is **GRANTED**.

## VII.    DEFENDANTS' MOTIONS IN LIMINE

A.    Motion in Limine No. 1:  Evidence of Uncharged Conduct

Defendant Wong seeks to exclude evidence of any alleged act that does not appear on the face of the indictment. (Dkt. No. 108). The government seeks to introduce evidence of various transactions involving the property of decedents' estates that Defendants Wong and Yagi allegedly engaged in as well as evidence of items which were allegedly found in Defendants' home but which were not expressly referenced in the indictment. Defendant Wong argues that because these transactions or items were not referenced in the indictment, they constitute "prior acts" under Federal Rule of Evidence 404(b). Defendant Wong further argues that the government failed to provide sufficient notice of this Rule 404(b) evidence and that proposed evidence does not satisfy Rule 404(b)'s standards. Finally, Defendant Wong argues that this evidence should be excluded as unfairly prejudicial under Rule 403.

1.    <u>Rule 404(b) Does Not Apply to Uncharged Acts of the Conspiracy</u>

Rule 404(b) is "'inapplicable . . . where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment.'" *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011) (quoting *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003)). Additionally, the rule is "well established that the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." *Id.* In *Rizk*, the government sought to introduce a summary chart in which showed a number of real estate transactions that the Defendant had been involved in as an appraiser. *Id.* at 1132. The defendant sought to exclude the chart on the basis that it included real estate transaction which were not specified in the indictment. The Ninth Circuit rejected this argument, finding that the summary chart was offered "to show the full scope of that conspiracy and as proof that the non-specified transactions were not 'other acts' at all – that is, that Rizk had prepared the appraisals for all 96 transactions in furtherance of the conspiracy." *Id.*

Similarly, in the Tenth Circuit case of *United States v. Parker*, 553 F.3d 1309 (10th Cir. 2009), the defendant were charged with having improperly overhauled small aircraft engines and falsely represented to customers that the engines met Federal Aviation Administration requirements. *Id.* at 1312. At trial, the government introduced evidence of three engine sales which were not listed as overt acts in the indictment. *Id.* at 1314. The defendant argued that these transactions should be excluded under Rule 404(b). The Tenth Circuit disagreed, finding that the "three transactions within the charged conspiracy time-frame are intrinsic to the crime and substantiate the criminal conspiracy. They directly support the conspiracy charged . . . ." *Id.* at 1315; *see also United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) ("An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other act' within the meaning of Rule 404(b); rather, it is part of the very act charged.").

At the same time, "[t]here must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995). In *Vizcarra*, the government sought to introduce evidence of the defendant's personal use of methamphetamine

**United States District Court**

For the Northern District of California

1  and argued that it was exempted from Rule 404(b). *Id.* The court found that this act was

2  insufficiently tied to the charged crime – possession of hydriodic acid with knowledge that it would

3  be used to manufacture methamphetamine. As a result, the government was required to seek

4  admission of the evidence under Rule 404(b). *Id.* Similarly, in order to be direct evidence or

5  inextricably intertwined with a conspiracy count, the un-charged conduct must fall within the

6  temporal scope of the conspiracy. *See Rizk*, 660 F.3d at 1132 (evidence was "intextricably

7  intertwined" with the conspiracy because each occurred within the "temporal scope of the

8  conspiracy and comprised the conspiracy." (quoting *United States v. Montgomery*, 384 F.3d 1050,

9  1062 (9th Cir. 2004)); *see also United States v. Barnes*, 49 F.3d 1144 (6th Cir. 1995) ("When the

10  other crimes or wrongs occurred at different times and under different circumstances from the

11  offense charged, the deeds are termed 'extrinsic.'").

12      Here, both the original indictment and the operative second superseding indictment charge

13  the defendants with conspiracy to commit theft concerning a federally funded program in violation

14  of 18 U.S.C. § 371 which began at an unknown date (but no later than March 23, 2009) and stopped

15  around December 2, 2011. (Dkt. No. 1, at 5; Dkt. No. 126, at 2). Specifically, the indictments

16  allege a conspiracy between Defendant Yagi and Defendant Wong to "embezzle, steal, obtain by

17  fraud, and convert to the use of a person other than the rightful owner property worth at least $500

18  and under the care, custody and control of such local government" in violation of the U.S. Code.

19  (*Id.*) While the indictments list specific overt acts taken in furtherance of this conspiracy, they also

20  make clear that the Defendants are alleged to have taken additional acts in furtherance of the

21  conspiracy. (Dkt. No. 1, at 6; Dkt. No. 126, at 3). The evidence of uncharged acts which

22  Defendants seek to exclude has a contextual and substantive connection to the alleged conspiracy

23  insofar as they represent alleged acts of theft, embezzlement, or other misuse of estate property or

24  funds pursuant to the underlying conspiracy. While Defendants argues that there is no indication the

25  challenged acts were in furtherance of the conspiracy and, at best, the evidence shows "separate,

26  parallel, individual acts," (Dkt. No. 136, at 3-4), this is a determination for the jury. In presenting

27  their case, the government is entitled to present evidence of the full scope of the alleged conspiracy.

28  *See Rizk*, 660 F.3d at 1131.

However, it is unclear to what extent *all* of the uncharged acts may constitute part of the alleged conspiracy. The indictment alleges that the conspiracy began at an unknown date. (Dkt. No. 126, at 2). However, the government has acknowledged that Mr. Wong did not become a public administrator until August 2008. (Dkt. No. 114, at 3). Thus, at least one part of the challenged evidence – "Evidence concerning defendant Yagi's possession of a Rolex watch in approximately 2005 or 2006, including but not limited to conflicting stories defendant Yagi told about where she obtained the Rolex." – clearly falls outside the temporal scope of the conspiracy and is subject to Rule 404(b). While the government is normally provided some leeway in introducing evidence of a conspiracy which has an unknown or indeterminate start date, *see, e.g.*, *United States v. Uriarte*, 575 F.2d 215, 2160-17 (9th Cir. 1978) , the government may not exempt from Rule 404(b) those uncharged acts which clearly occurred prior to the commencement of the alleged conspiracy.

Accordingly, any uncharged acts arising prior to the conspiracy would have to meet the Rule 404(b) standard. Ultimately, however, the Court finds that such acts should be excluded under Rule 403 for the following reasons.

### 2.   Rule 403 Balancing

Defendants argue that even if otherwise admissible, the challenged evidence should be excluded as unfairly prejudicial under Rule 403. Defendants argue the evidence is more extensive and more inflammatory than anything charged in the indictment, causing the jury to convict the defendants despite the weak evidence supporting the actual charges. (Dkt. No. 108, at 17). Defendants also argue that introduction of this evidence will multiply the trial several times over. (*Id.*)

The Court disagrees that the majority of this information should be excluded. First, the challenged evidence is directly probative to the defense offered by Defendants Wong and Yagi that they had authority to engage in the alleged transactions or to possess the property in question charged in the indictment and lacked the specific intent to engage in theft. (Dkt. No. 108, at 11). Evidence that Defendants' possession of estate property went beyond a few isolated occurrences and included property from a variety of estates tends to rebut this defense. *Cf. United States v. Livingston*, 725 F.3d 1141, 1148 (9th Cir. 2013) (recognizing that even prior acts under Rule 404(b)

can be introduced to show motive or intent).  Second, while the additional evidence may present a risk of prejudice to Defendants, it is not a risk of *unfair* prejudice.  "It is the hallmark of criminal prosecutions that relevant incriminating evidence prejudices a defendant."  *United States v. Von der Linden*, 561 F.2d 1340, 1341 (9th Cir. 1977) (per curiam).  That Defendants are alleged to have engaged in a conspiracy with a number of instances of theft or embezzlement does not preclude the government from offering evidence as to the scope and breadth of that alleged conspiracy.

Similarly, the court finds that the risk of unfair prejudice is mitigated by the fact that the uncharged conduct does not involve conduct that is more inflammatory than the charged acts.  *See United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999) (rejecting a Rule 403 challenge, in part, because the "evidence did not involve conduct more inflammatory than the charged crime").  The specific acts charged in the indictment involve alleged misappropriation of funds and property of various estates – including through the selling of estate property and the misappropriation of the proceeds.  The uncharged acts are of this same nature.

At the same time, however, the Court is mindful of the case management implication of this evidence.  Accordingly, the Court will exclude under Rule 403 those uncharged acts that are not related to the conspiracy count.  Specifically, the Court will exclude any of the uncharged acts occurring prior to August 2008 – the date Mr. Wong became a public administrator.  Any conspiracy could not have existed prior to this date.  Even if such acts might be admissible under Rule 404(b), the Court finds that the probative value of this older evidence is substantially outweighed by the risk of unfair prejudice to Defendant Wong and is needlessly cumulative with the other uncharged acts which allegedly occurred during the temporal scope of the conspiracy and on which the government will be permitted to introduce evidence.

       3.     <u>Notice and Cumulative Presentation of Evidence Concerns</u>

Defendants have also asserted that the government failed to provide sufficient notice under Rule 404(b).  In light of the Court's ruling finding, questions regarding the sufficiency of any Rule 404(b) notice are moot.  *See, e.g.*, *United States v. Townsend*, No. S1 06CR. 34, 2007 WL 1288597 (S.D.N.Y. May 1, 2007) ("If evidence is determined to be admissible as intrinsic or direct proof of the charged crimes, as distinguished from 'other acts' under Rule 404(b), the Government need not

**United States District Court**

For the Northern District of California

fulfill Rule 404(b)'s notice requirement . . . ."). At the same time, the Court finds questions of notice mor generally relevant to whether there exists a risk of unfair surprise under Rule 403. *Cf. United States v. Price*, 13 F.3d 711 (3d Cir. 1994) ("[U]nfair surprise is a factor to be considered under Rule 403 . . . ."); *United States v. Cole*, 857 F.2d 971, 976 (4th Cir. 1988) (providing that testimony which was not properly and accurately disclosed should have been excluded under Rule 403 on the grounds of unfair prejudice and surprise).

In its July 15, 2013 letter, the government disclosed its intention to introduce the uncharged act evidence and generally described the uncharged acts. The Court is troubled by the lack of specificity contained in this letter. Accordingly, to eliminate the risk of unfair surprise and unfair prejudice under Rule 403, the Court will hold the government to those uncharged acts which it specifically referenced in the July 15, 2013 letter.

Accordingly, the government will be precluded from introducing any evidence of an uncharged act which is not referenced specifically in the July 15, 2013 letter. For example, one the challenged acts (bullet point 2) provides:

> Evidence regarding the Patricia M. Estate, *including but not limited to* evidence regarding arrangements for the payment of rent concerning the apartment complex in San Mateo; evidence concerning the defendants' planned trip to Paris in 2011; evidence concerning Wong's efforts to become a private administrator for the estate; and evidence concerning repair work at properties belonging to the estate.

(Dkt. No. 108-1, at 2 (emphasis added)) The government will be precluded from offering any evidence regarding the Patricia M. estate" except for the listed examples of paying rent, the Paris trip, Defendant Wong's efforts to become a private administrator, or the repair work. Similarly, another challenged act (bullet point 6) provides: "Evidence of the defendants' sale of jewelry, including to Carole R. and at a location in Millbrae." (*Id.*) As to this bullet point, the government will only be permitted to introduce evidence regarding sales to Carole R. at Millbrae. The above are merely illustrative examples. For bullet points 1 through 4, 6, 7, 11, and 16 the government will be

prohibited from offering any evidence except for the concrete, specific examples it disclosed in each bullet point. The phrase "including but not limited to," shall be disregarded.[3]

Finally, while the Court finds that any given uncharged act occurring within the scope of the alleged conspiracy is admissible in isolation, the Court is concerned about the potential for this evidence to become cumulative. As a result, to eliminate the risk of unfair surprise and unfair prejudice to the defense, and to allow the Court to properly evaluate any cumulative objection, the government is ordered to file by Friday, October 18, 2013 at 5:00 p.m. a list of the specific uncharged acts/allegedly misappropriated property it intends to introduce at trial. The government shall not merely restate the July 15, 2013 letter or its proposed exhibit list. Rather, this list shall consist only of those uncharged acts/allegedly misappropriated property that the government, at this late date, actually *intends* to use at trial. This list shall include: (1) a detailed description of the uncharged act/allegedly misappropriated property (including, but not limited to, the estates to which they relate); (2) the precise exhibits (by exhibit numbers) the government intends to use to support this uncharged act; (3) any witnesses who will testify as to the uncharged act/misappropriated property; and (4) for allegedly misappropriated property, where the item was located in Defendants' home.[4] Pursuant to this Court's ruling, this list shall not include any uncharged act which occurred before August 2008 – when Defendant Wong began his employment with the Public Administrator's Office.

Accordingly, Defendant Wong's motion in limine is **GRANTED** in part and **DENIED** in part. To the extent Defendant Wong seeks to exclude evidence of all uncharged acts which occurred during the alleged temporal scope of the conspiracy, the motion is **DENIED**. The motion is **GRANTED** as to all uncharged acts which occurred prior to August 2008. The motion is further

---

[3] The Court finds that the July 15, 2013 provides sufficient notice regarding the property seized from Defendants' home during execution of the respective search warrants.

[4] The Court finds that the location of the items in question is relevant to any assessment of a cumulative objection. For example, five separate, independent items located in different locations presents a different question for Rule 403 purposes than 5 items located together in the same container.

**GRANTED** insofar as the government will not be permitted to introduce evidence about any uncharged act not expressly referenced in the government's letter of July 15, 2013. (Dkt. No. 108-1).

The government is **ORDERED** to file a list of all uncharged acts which are not otherwise excluded by this order and which the government intends to introduce at trial. This list shall include the information discussed above and shall be filed no later than Friday, October 18, 2013 at 5:00 p.m.

## VIII.    WITNESSES & EXHIBITS

A.    Government's Witnesses and Exhibits

The government has submitted a witness list identifying 68 individuals but reserving its right to add to or modify the witness list. (Dkt. No. 116). The government has indicated that it expects to call fewer witnesses at trial than appear on their witness list, contingent, for example, on the ability of the parties to stipulate as to the authenticity of exhibits. The government has also filed a list of approximately 450 exhibits. (Dkt. No. 115). In addition to their motion in limine, Defendants have filed objections to both. (Dkt. Nos. 107, 115, 130).

By Court order, the Defendants were ordered to provide a list of 15 exhibits as examples of exhibits to which they object. (Dkt. No. 135). The Court now rules on these objections as well as the objections to the government's witnesses.

1.    Revised Government Witness List

During the pretrial conference, the Court expressed concern about the number of witnesses proffered by the government and the apparent overlap between many of these witnesses. The government stated that it intended to avoid the cumulative presentation of testimony and did not intend to call all the witnesses on its list. Given the impending trial date and in light of the following rulings on Defendants' objections to the government's proposed witnesses, the government is ordered to provide an amended witness list that consists of those witnesses that the government *intends* to call at trial. This amended witness list shall provide a more detailed proffer as to the proposed witnesses' testimony. The amended witness list shall be filed no later than Wednesday, October 23, 2013, at 5:00 p.m.

2.    Objections to Government Witnesses

a.    Witnesses Testifying About Uncharged Acts

Defendants object to the testimony of approximately thirty-two witnesses to the extent that they will testify as to any conduct not specifically charged in the indictment.  This objection is **OVERRULED** pursuant to, and subject to the limitations of, this Court's ruling on Defendants' motion in limine.

b.    Witnesses Relating to the Search of Defendants' Homes

The government has proffered sixteen witnesses[5] to testify regarding the search of the Defendants' residences (7 for the search of Defendant Wong's residence and 9 for the search of Defendant Yagi's residence).  These witnesses are detectives or officers with the San Mateo County Sheriff's Office.  Defendants object to these witnesses as cumulative.

It appears, however, that the government has listed these witnesses because of the need to authenticate the items obtained during these searches as a prerequisite to their admission into evidence.  (*See* Dkt. No. 116, at 1; Dkt. No. 114, at 12; Dkt. No. 160 ).  The government has expressed a desire to avoid the need to call each witness to authenticate these exhibits.  (Dkt. No. 114, at 12 ("Multiple officers seized multiple items of evidence at each home, and calling each one to authenticate each physical item from the stand would take a very long time.  The government would like to work out a way to authenticate physical evidence quickly and efficiently . . . .").

Defense counsel raises the possibility that there may be a single law enforcement agent who has sufficient personal knowledge to testify regarding the items found and seized during the search of Defendants' homes.  (Dkt. No. 130, at 1-2).  The Court also expects the parties to agree to stipulate as to facts – including the chain of custody/authenticity and foundation of exhibits – that are not subject to reasonable dispute.  *See Hamilton v. RadioShack Corp.*, No. C 11-00888 LB, 2012 WL 4545771, at *3 n.4 (N.D. Cal. Sept. 28, 2012) ("In the future, the court expects the parties to stipulate to the authenticity of documents where authenticity is not reasonably in dispute.").  Given

---

[5] These witnesses are H. Acosta, Andrew Armando, Victor Bartolozzi, K. Clayton, John Corkery, M. Gathright, L. Gibbons, Jim Gilletti, B. Hand, L. Lopez, Saul Lopez, Ray Lunny, Ken Owen, Bryan Raffaelli, Robert Rangel, J. Sabel.

that Defendant Wong and Defendant Yagi appear to not contest the fact that they were in possession of certain estate property, but rather argue that they were authorized to possess the items in question, the Court sees no reason why the authenticity and foundation of the items seized in the search cannot be stipulated to by the parties. *Cf. O Bar Cattle Co. v. Owyhee Feeders, Inc.*, No. CV08-149-S-EJL-CWD, 2010 WL 2404306, at \*6 (D. Idaho June 10, 2010) ("These laboratory reports are precisely the kind of evidence that, if possible, should be stipulated to by the parties at least in terms of their foundation and authenticity. It does not appear from either sides' briefing that there is a reason not to stipulate to the foundation and authenticity of the reports themselves.").

During the pretrial conference, Defendants indicated that there may not be a dispute regarding the chain of custody, authenticity, or foundation of the items seized from Defendants' homes, but that the precise location and condition of the items may be relevant. The government indicated that this information may be subject to stipulation. Accordingly, the parties are ordered to meet and confer regarding the extent to which either (1) the authenticity, foundation, locations, and condition of the items seized from Defendant Yagi's and Defendant Wong's home may be stipulated; and (2) if that is not possible, whether there is one designated "finder" for each search who could adequately testify as to the authenticity and location of the items in question. *See* Fed. R. Evid. 901(b)(1); *see also United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991). The parties shall advise the Court of the result of this meet and confer in its joint statement due to the Court on Monday, October 21, at 10:00 a.m.

To the extent the parties cannot, or will not, stipulate to the above facts the relevant party shall state why it will not so stipulate. If there is no stipulation and there is not a single designated "finder" for each search who could adequately testify, authenticity/chain of custody of the physical evidence seized from Defendants' homes, the Court will **OVERRULE** Defendants' objections to those witnesses the government must call in order to establish this foundation.

c. FBI Agents

The government has proffered eight FBI agents. All but one – Agent Douglas R.W. Cook – have been proffered to testify "as part of the chain of custody of physical evidence in this case." The Court's admonition to the parties to meet and confer regarding the possibility of stipulating to

the foundational and authenticity prerequisites of the physical evidence, discussed *supra*, applies equally here.  To the extent the parties cannot reach an agreement, the Court will **OVERRULE** Defendant's objections.

To the extent Defendants object to Agent Cook's testimony "about his investigation and as a summary witness," this objection is **OVERRULED**.

        d.    <u>San Mateo County Controller Witness</u>

The government has proffered Bob Adler – the controller of San Mateo County – or an "alternate county official" to testify about the county's receipt of federal funding.  (Dkt. No. 159, at 2).  The Defendants have objected to this witness.  First, the Defendants argue that the government failed to make any Rule 16 disclosure as to any county official who would testify on this point.  Second, the Defendants argue that any county official witness on this point would necessarily be relying on a hearsay document (an audit report conducted for the county) and lack personal knowledge.  (Dkt. No. 161, at 4).

The parties shall meet and confer as to whether this is a fact to which the parties can stipulate or if there is a reasonable dispute as to whether the San Mateo County received at least $10,000 in federal benefits for each relevant 12 month period.  The parties shall advise the Court of the result of this meet and confer in its joint statement due to the Court on Monday, October 21, at 10:00 a.m.

To the extent the parties are not able to arrive at a stipulation, the Defendants' objection will be **OVERRULED** to the extent the controller or deputy controller can establish either personal knowledge or reliance on admissible evidence which is part of his/her normal duties.

        e.    <u>Witnesses Testifying Regarding the Metal Box and Madison Search</u>

The government has proffered five witnesses who will testify, in part, about the discovery of the metal box at the Madison residence – Andrew Armando, Detective Matthew Broad, Katherine Howard, and Lisa Mancini.  Defendants object to this testimony as cumulative to the extent that each will testify as to the discovery of the metal box.  Defendant's objection is **SUSTAINED**.  The government will be permitted to elicit testimony regarding the discovery of the metal box and search of the Madison residence from two witnesses, not all five.

f.    <u>Appraisal Witnesses</u>

The government has proffered two witnesses to testify as to the value of certain estate property found in the Defendants' house.  Specifically, the government has proffered Bert Berenfus, an employee of Monaco Watch Brokers, to "testify about the value of watches belonging to the Shimada Estate that were found at Wong's home."  (Dkt. No. 159, at 2).  The government has also proffered Tracy Layfield, an employee of the United States Department of the Treasury, to "testify about the open, unredeemed status of the Guinasso and Lovell savings bonds" as well as their value.  (*Id.* at 5).  Finally, the government has also stated that it intends to call "one or more witnesses to assess the value of items taken by the defendants from estates."  (Dkt. No. 159, at 8).  The Defendants object to these witnesses under Fed. Crim. R. 16(a)(1)(G) on the basis that these witnesses' proposed testimony renders them experts and that the government has failed to disclose a written summary of their opinions and, in some cases, their identity.  (Dkt. No. 161, at 2, 5-6, 21).  The government has indicated its belief that these witnesses are permitted to testify to the value of property as lay witnesses.

The government is correct that Ms. Layfield's testimony is not expert testimony within the meaning of Rule 702.  Ms. Layfield has been proffered to testify regarding the unredeemed nature of savings bond at issue and their current value, accounting for accrued interest.  This is not testimony based on "scientific, technical, or other specialized knowledge."  Fed. R. Evid. 702(a).  Accordingly, Ms. Layfield will be permitted to testify.[6]  At the pretrial conference, the parties indicated that the parties may be able to stipulate as to the value of the savings bond in question, thus obviating the need for Ms. Layfield to testify.  The Court ordered the parties to meet and confer to determine whether a stipulation could be reached.  The parties shall advise the Court of the result of this meet and confer in its joint statement due to the Court on Monday, October 21, at 10:00 a.m.

On the other hand, Mr. Berenfus and any other appraisal expert the government intends to call at trial would need to be qualified as an expert.  Rule 701 states that lay witnesses may only

---

[6] Similarly, the government has proffered Steve Dixon to testify about the value of a Western Union money order found in a metal box at the residence of Patricia Madison.  The parties have indicated that they stipulate as to the value of this money order, so Mr. Dixon's testimony will no longer be necessary.

1  testify as to their opinion to the extent it is "rationally based on the witness's perception" and that is

2  not based on "scientific, technical, or other specialized knowledge within the scope of Rule 702."

3  Fed. R. Evid. 701(a), (c).  Under this rule, courts have permitted owners of property to testify under

4  Rule 701 as to the value of their property.  The Advisory Committee Notes to Rule 701 provides:

5         most courts have permitted the owner or officer of a business to testify
       to the value or projected profits of the business, without the necessity
6         of qualifying the witness as an accountant, appraiser, or similar expert.
       Such opinion testimony is admitted not because of experience, training
7         or specialized knowledge within the realm of an expert, but because of
       the particularized knowledge that the witness has by virtue of his or
8         her position in the business.

9  Fed. R. Evid. 701 advisory committee note (citation omitted).  Similarly, in *Neff v. Kehoe*, 708 F.2d

10 639 (11th Cir. 1983), the Eleventh Circuit recognized that courts "have held that 'an owner of

11 property is competent to testify regarding its value.'"  *Id.* at 644.  Thus, in that case, the court held

12 that the purchaser of coins could testify as to the value of those coins in an action for

13 misrepresentation relating to the sale.  *Id.*  The rationale behind this rule is that an owner, "because

14 of his ownership, is presumed to have special knowledge of the property and may testify as to its

15 value."  *United States v. 10,031.98 Acres of Land*, 850 F.2d 634, 636 (10th Cir. 1988) (quoting

16 *United States v. Sowards*, 370 F.2d 87, 92 (10th Cir. 1966)).

17        Here, it appears Mr. Berenfus and any appraisers the government may call are not (and never

18 have been) the owners of the property in question.  Accordingly, they fall outside of the case law

19 above insofar as they would not have the "particularized knowledge" that comes with ownership.

20 "It is well accepted that owners may testify as to the value of their property.  If a witness is not the

21 owner of the property sought to be valued, he must qualify as an expert under Rule 702 in order to

22 testify as to his opinion of value."  *In re Gray*, No. 09-14445-RGM, 2010 WL 276179 (Bankr. E.D.

23 Va. Jan. 15, 2010).  Thus, in *Compania Administratdora de Recuperacion de Activos*

24 *Administradora de Fondas de Inversio Sociedad Anonima v. Titan Int'l, Inc.*, 533 F.3d 555 (7th Cir.

25 2008), the Seventh Circuit held that a lay witness could not testify as to the value of collateral

26 property because the only connection the witness had to the property was "the fact that he is an

27 officer of a company that, at one time, held a controlling interest in a company that, at one time

28 owned the collateral."  *Id.* at 560.  The witness had reviewed a list of items and "estimated their

value based on his extensive experience purchasing and selling the type of goods at issue. This is the kind of testimony traditionally provided by an expert." *Id.*

Further, in *Vaello-Rodriguez v. Mobro Marine, Inc.*, No. 04-2277(JP), 2007 WL 7647036 (D.P.R. Jan. 9, 2007), the district court excluded the testimony of a licensed real estate appraiser. The witness would have testified about the value of plaintiffs' property. *Id.* at *4. The court excluded the testimony because although the witness "has personally observed the property, his opinions regarding the valuations are based on his specialized knowledge of real estate valuations." *Id.* Thus, his testimony was subject to Rule 702. *Id.* Finally, in *Hodak v. City of St. Peters*, No. 04-cv-01099 ERW, 2006 WL 3210495 (E.D. Mo. Nov. 6, 2006), the district court prohibited the plaintiff, an operator (but not owner) of a bar, from testifying as to the diminution in the value of that bar. *See id.* at *2. The Court found that "[a]s Plaintiff Brian Hodak is not the owner, the testimony he intends to give must either be lay testimony . . . or he must qualify as an expert under Rule 702." *Id.* The court found his testimony as to the value of the bar to require his qualification as an expert. *Id.*

Accordingly, to the extent that Mr. Berenfus and any appraiser witnesses are not the owners of the property sought to be appraised, their testimony necessarily turns on their experience and training in their respective fields, and their testimony would have to qualify under Rule 702. *See, e.g.*, *Titan Int'l*, 533 F.3d at 561 ("Testimony based solely on a person's special training or experience is properly classified as expert testimony, and therefore it is not admissible under Rule 701.").

This distinction is critical. Under Fed. R. Crim. P. 16(a)(1)(G), "the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief-at trial." Additionally, this summary must include the "bases and reasons for those opinions, and the witness's qualifications." The purpose of this rule is to "provide defendant with an opportunity to challenge the expert's opinion and qualifications." *United States v. McNeil*, No. 3:09-cr-320, 2010 WL 56096, at *7 (M.D. Pa. Jan. 5, 2010). The Rule does not include specific timing requirements, however, the advisory committee notes state that it is "expected that the parties will make their requests and

disclosures in a timely fashion." Fed. R. Crim. P. 16 advisory committee note. Where the government has failed to timely disclose under Rule 16, the court may order further discovery, grant a continuance, exclude the undisclosed evidence, or enter any order that is just under the circumstances. Fed. R. Crim. P. 16(d)(2). In determining which sanction to employ, the Court should typically consider three factors: "(1) the reason for the government's delay in production; (2) the extent of prejudice to the defendant as a result of the delay; and (3) the feasibility of curing the prejudice with a continuance." *United States v. Brown*, 592 F.3d 1088, 1090 (10th Cir. 2009).

Defendants have represented (and the government does not dispute) that they requested Rule 16 disclosure of any experts upon which the government would rely on July 12, 2012. It appears that the government, to date, has not disclosed the content of any expert's opinions, the bases for those opinions, their qualifications, or (for many of the appraisers) their identities. It is now less than one month before the start of trial. Accordingly, the court finds that the government has failed to timely comply with its disclosure requirements under Rule 16. The court is not persuaded by the government's stated reason for failing to comply with Rule 16's requirement: that it believed the witnesses in question could testify as lay witnesses. Further, as a result of the untimely disclosure, the defense has been prejudiced in its ability to evaluate the proffered expert testimony and, if necessary, secure rebuttal witnesses to testify as to the value of a potentially diverse set of items. Finally, the court finds that continuing the trial at this late date is not feasible. Accordingly, the Court will **SUSTAIN** Defendants' objection and exclude the testimony of Mr. Berenfus as well as any other appraisal witnesses.[7]

---

[7] Defendants have also objected to the testimony of William Whitlock and undisclosed "bank officials" for failure of the government to designate them as experts and properly disclose under Rule 16. The Court will **OVERRULE** these objections to the extent Mr. Whitlock is being used to authenticate records and the bank officials will testify regarding bank procedures of which they have personal knowledge. *See, e.g.*, *LaRouche v. Webster*, 175 F.R.D. 452 (S.D.N.Y. 1996) (holding that an FBI agent could testify to the FBI's investigation procedures and practices of which he had personal knowledge).

g.   Witnesses Relating to Internal Practices, Procedures, or Operations of the
     Public Administrator's Office

The government has proffered a number of witnesses who would testify, in part, as to the practices, procedures, or operations of the Public Administrator's Office.[8]  The Defendants have objected to the testimony of these witnesses to the extent they are cumulative with each other.  The objection is **SUSTAINED**.  The government will be permitted to elicit testimony about the practices and procedures of the Public Administrator's Office while it was part of the San Mateo County District Attorney's Office from one witness.  Similarly, the government will be permitted to elicit testimony about the practices and procedures of the Public Administrator's Office once it became part of the Office of Aging and Adult Services from one additional witness.

The government has also proffered three witnesses who would testify as to the procedures for finding and handling assets belonging to estates administered by the Public Administrator's Office.[9]  Defendant Yagi objects to these witnesses as cumulative to the extent they are all offered to testify about the procedures for finding and handling assets.  The objection is **SUSTAINED**.  The government will be permitted to elicit testimony about the procedures for finding and handling assets from one of these witnesses.

To the extent the witnesses referenced above are proffered to testify about their separate interactions with or observations of the Defendants, Defendants' objection is **OVERRULED** as it is not cumulative.

Relatedly, the government has proffered the testimony of Lisa Mancini to testify regarding the management changeover of the Public Administrator's Office from the District Attorney's Office to the Office of Aging and Adult Services as well as her interactions with Defendants, "including their resistance to the changeover."  (Dkt. No. 161, at 15).  Defendants object to this testimony on relevance grounds.[10]  Defendants' objection is **OVERRULED**.  Ms. Mancini's testimony regarding

---

[8] These witnesses are Arteaga, Castillo, Wagstaffe, Howard, Krup, and Toney.

[9] These witnesses are Barraza, Prochnow, Krup, and Rink.

[10] To the extent Defendants object to Ms. Mancini's testimony regarding discovery of the metal box in the Madison residence, the Court has ruled on this objection above.

the Defendants' alleged resistance to the changeover is relevant insofar as the Defendants' interactions and relationship with their supervisors post-changeover is at issue in this case. She will also be permitted to testify more generally about the management changeover from the District Attorney's Office to the Office of Aging and Adult Services.

### h. Coroner Witnesses

The government proffers three witnesses from the San Mateo County Coroner's Office. Mr. Foucrault is the San Mateo Coroner. Ms. Gamble and Ms. Rippy[11] are deputy coroners. The government proffers that these witnesses will testify about their interactions with the public administrator's office as well as "issues relating to the defendants accepting or not accepting estates from the coroner's office." (Dkt. No. 159, at 4, 7). Defendants object to this testimony as irrelevant. (Dkt. No. 161, at 9,18).

At the pretrial conference, the government indicated that this testimony is relevant because the witnesses will testify that when the Public Administrator's Office was part of the District Attorney's Office, it was difficult for them to get the Public Administrator's Office to take on estates. The government seeks to argue that during this time, Defendants had extensive discretion about which estates to take on and that they used this discretion to "pick and choose" those estates which would be vulnerable to theft.

The Court finds that this testimony, as proffered at the pretrial conference, is too tangentially relevant and speculative for admission. However, the government will be provided an opportunity to provide a more specific proffer of this proposed evidence. For this testimony to be relevant, the witnesses must be able to testify to facts within their personal knowledge which suggest that Defendants were engaged in a pattern or practice of selectively choosing estates. Examples could include specific questions Defendants asked about the estates, common attributes of the selected estates, etc. The government's proffer will state, with specificity, the bases for these witnesses

---

[11] To the extent that the government proffers Ms. Rippy to testify about Defendant Yagi wearing a Rolex watch in 2005 or 2006 and Defendant Yagi giving conflicting stories about where she obtained it, Defendants' objection is **SUSTAINED**. *See* Defendants' MIL.

testimony.  This proffer shall be included in the government's revised witness list to be filed by Wednesday, October 23, 2013 at 5:00 p.m.

        i.    <u>Witnesses Regarding Interactions/Communications with Defendant Wong About the Madison Estate</u>

The government proffers three witnesses who will testify about communications or interactions with Defendant Wong relating to the Madison Estate.  Two of these witnesses – Mary Pat Blaylock and Joan Gosick – are heirs of the estate while the third, Maureen James, is a clerk at the San Mateo County Counsel's Office.  The Defendants object arguing the testimony of both witnesses is cumulative and that to the extent the testimony involves the witnesses' communications with Defendant Wong, it is inadmissible hearsay.  (Dkt. No. 161, at 6, 10, 12).

To the extent that the witnesses are testifying regarding their separate interactions with Defendant Wong, Defendants' objection is **OVERRULED**.  Further, Defendant Wong's communications to the witnesses is admissible as non-hearsay admissions.  Fed. R. Evid. 801(d)(2).  To the extent that the government will seek to elicit testimony about what the witnesses told Defendant Wong, this testimony will either need to be used for a non-hearsay purpose or fall within one of the hearsay exceptions, such as to show Defendant Wong's state of mind.

        j.    <u>Witness Tim McCracken</u>

The government proffers that Tim McCracken, a vice president of Panoramic Software, Inc. will testify about the "Panoramic estate management software application used by San Mateo County and about the access and permissions the defendants had in their use of that application." (Dkt. No. 159, at 6).  The Defendants argue that this evidence is irrelevant because there is no evidence that the Defendants actually used this software "to accomplish any of the acts alleged in this case." (Dkt. No. 161, at 16).

At the pretrial conference, the government indicated that there is evidence to show that Defendants utilized the Panoramic Software and that the records of this software is relevant to show that Defendants did not "log" property they misappropriated into the system.  The government also indicated that to the extent the parties are able to stipulate as to the authenticity of the Panoramic records, Mr. McCracken's testimony will not be necessary.  The parties shall meet and confer

regarding the possibility of stipulating as to the authenticity of these records.  The parties shall advise the Court of the result of this meet and confer in its joint statement due to the Court on Monday, October 21, at 10:00 a.m.

To the extent the parties are not able to stipulate as to the authenticity of the Panoramic records, Defendants' objection will be **OVERRULED**.

        k.     <u>Witness Rodel Ramos</u>

The government proffers Rodel Ramos, Defendant Wong's domestic partner, to "testify to his observations of and interactions with the defendants, including his receipt of estate funds and his observations of estate assets at the home he shared with Wong." (Dkt. No. 159, at 7).  Defendant objected to this testimony as speculative and without personal knowledge.  (Dkt. No. 161, at 17).  Defendant further objected to this testimony on the basis of spousal/domestic partner privilege.  (*Id.*)  At the pretrial conference, the Defendants indicated that they no longer have any objection to Mr. Ramos testifying.

        l.     <u>Witness Mike Wells</u>

The government proffers Mr. Wells, vice president at Airtrade International, Inc., to "authenticate and explain records of the purchase and refund of plane tickets for the defendants' planned trip to Paris in October 2011." (Dkt. No. 159, at 8).  The government asserts this testimony is relevant because of its claim that Defendants planned to travel to France in order to misappropriate property belonging to the Madison estate.  The Defendants object to this testimony as cumulative. (Dkt. No. 161, at 21).  The government indicated that to the extent the parties can stipulate as to the authenticity of the plane tickets, Mr. Wells' testimony will not be necessary.  The parties shall meet and confer regarding the possibility of a stipulation as to the authenticity of the plane ticket records.   The parties shall advise the Court of the result of this meet and confer in its joint statement due to the Court on Monday, October 21, at 10:00 a.m.

To the extent the parties are not able to stipulate as to the authenticity of the plane tickets, Defendants' objection will be **OVERRULED**.

3.    Objections to Government Exhibits

The Court has notified the parties regarding concerns it has about the government's exhibit binders. Currently, for a number of exhibits, the tabs in the government's binders contain a piece of paper generally describing the object. Included in this treatment is a number of documents. The government has represented that these voluminous sets of documents are not being introduced for any purpose relating to their substance, but merely to show that they were found in Defendants residences. The Court has advised the Government that to the extent any legitimate issue arises as to the contents of these documents, the failure of the government to provide copies of the documents to the court before Friday, October 18, 2013 at 5:00 p.m. will subject them to exclusion.

Further, the Court rules as follows on the government's objections to Defendants' exhibits:

Exhibit 42:      OVERRULED. *See* Defense MIL No. 1. Not offered for the truth of the matter asserted. *See United States v. Pulido-Jacobo*, 377 F.3d 1124, 1132 (10th Cir. 2004). Ruling is without prejudice as to the cumulative objection, pending trial. Ruling is further contingent on the government articulating a theory of relevance. At the pretrial conference, the government indicated it is unlikely to introduce this exhibit at trial.

Exhibit 44:      At the pretrial conference, the government indicated it will not introduce this exhibit at trial.

Exhibit 48:      OVERRULED. *See* Defense MIL No. 1. Either not offered for the truth of the matter asserted or admissible as an adoptive admission.

Exhibit 53:      OVERRULED**.** *See* Defense MIL No. 1. Not hearsay – no statement/not offered for the truth of the matter asserted.

Exhibit 69C:     OVERRULED contingent on government articulating a theory of relevance. Admission of a party opponent. At the pretrial conference, the government indicated it is unlikely to introduce this exhibit at trial.

| | | |
|---|---|---|
| 1 | Exhibit 77A: | OVERRULED. Relevant to show potential motive. Not |
| 2 | | offered for the truth of the matter asserted. Ruling is without |
| 3 | | prejudice as to the cumulative objection, pending trial. At the |
| 4 | | pretrial conference, the government indicated it is unlikely to |
| 5 | | introduce this exhibit at trial. |
| 6 | Exhibit 78B: | OVERRULED. Relevant to show relationship between |
| 7 | | Defendant Wong and Rodel Ramos. Admissible as an |
| 8 | | adoptive admission. Ruling is without prejudice as to the |
| 9 | | cumulative objection, pending trial. |
| 10 | Exhibit 99: | OVERRULED. *See* Defense MIL No. 1. Not offered for the |
| 11 | | truth of the matter. Ruling is without prejudice as to the |
| 12 | | cumulative objection, pending trial. |
| 13 | Exhibit 106: | OVERRULED. *See* Defense MIL No. 1. Not hearsay as |
| 14 | | there is no assertion/it is not being offered for the truth of the |
| 15 | | matter asserted. |
| 16 | Exhibit 107: | OVERRULED. *See* Defense MIL No. 1. Not offered for the |
| 17 | | truth of the matter. Ruling is without prejudice as to the |
| 18 | | cumulative objection, pending trial. |
| 19 | Exhibit 117: | OVERRULED. *See* Defense MIL No. 1. Not offered for the |
| 20 | | truth of the matter. Ruling is without prejudice as to the |
| 21 | | cumulative objection, pending trial. |
| 22 | Exhibit 121A: | OVERRULED. *See* Defense MIL No. 1. Not offered for the |
| 23 | | truth of the matter. Ruling is without prejudice as to the |
| 24 | | cumulative objection, pending trial. |
| 25 | Exhibit 125: | OVERRULED. *See* Defense MIL No. 1. Admissible only to |
| 26 | | the extent government lays proper foundation under Rule |
| 27 | | 803(6). Ruling is without prejudice as to the cumulative |
| 28 | | objection, pending trial. |

Exhibit 161:    OVERRULED.  Ruling is without prejudice, pending trial.

Exhibit 264:    OVERRULED.  *See* Defense MIL No. 1.  Not offered for the truth of the matter asserted.  Ruling is without prejudice as to the cumulative objection, pending trial.

B.    Defendants' Witnesses and Exhibits

Both Defendants have filed witness lists.  Defendant Wong's witness list identifies 20 witnesses and Defendant Yagi's witness list identifies 13 witnesses (4 proffered witnesses appear on both Defendants' witness lists).  Defendants have also submitted exhibit lists.  Defendant Wong has proffered 52 exhibits while Defendant Yagi has proffered 5 exhibits.  The government has filed objections to both the witness lists and the proffered exhibits.

By Court order, the government was ordered to provide a list of 15 exhibits as examples of exhibits to which it objects.  (Dkt. No. 135).  The Court now rules on these objections as well as the objections to the government's witnesses.

1.    Objections to Defendants' Witnesses

a.    Sharon McAleavey, Linda Eoff, Elizabeth Nguyen, and Nicole McKay

The government objects on the basis of hearsay to the testimony of these witnesses to the extent they will include statements made by the Defendants regarding their resignation.   For the reasons articulated in this Court's ruling on the government's first motion in limine, this objection is **OVERRULED** to the extent any Defendants' statement is used to demonstrate the Defendants' state of mind.  To the extent such evidence is used, the Court will provide a limiting instruction.  This ruling is without prejudice to an objection based on Rule 403.

b.    Dan Hanley

At the pretrial conference, the Defendants indicated they will not be calling Mr. Hanley to testify.

c.      Dr. Jesse Doherman, Dr. Ann Chang and Dr. Sheryl Ewing

For the reasons articulated in this Court's ruling on the government's third motion in limine, this objection is **OVERRULED**.  These doctors will be permitted to testify as to what they saw, what Defendants told them for purposes of obtaining treatment, diagnoses the doctors made, treatments they ordered, and the Defendants' condition they observed during the relevant time period.  *See, e.g.*, *Damiani v. Momme*, No. 11-2534, 2012 WL 1657920 (E.D. Pa. May 11, 2012) ("[H]is doctors are free to testify as to Plaintiff's statements to them during their care and treatment; as to their own examination, diagnosis, and treatment of Plaintiff; and as to Plaintiff's prognosis based on their observations during treatment.").  They will not be permitted, however, to express opinions as to, *e.g.*, why Defendants resigned their positions with San Mateo County.

2.      Objections to Defendants' Exhibits

The Court rules as follows on the government's objections to Defendants' exhibits:

| | |
|---|---|
| Exhibit Wong S: | OVERRULED.  Offered to show that claim was made. *See Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012). |
| Exhibits Wong T: | OVERRULED.  Offered to show terms of contract. *See Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994). |
| Exhibit Wong V: | OVERRULED.  *See* Government MIL 3.  Statements by Defendant Wong to his doctor for purposes of obtaining diagnosis or treatment, admissible under Rule 803(4).  Other statements admissible provided Defendant Wong can lay foundation under Rule 803(6).  Only records between June 2011 and March 2012 shall be admitted. |
| Exhibit Wong W: | OVERRULED.  *See* Government MIL 1. |
| Exhibit Wong Y: | OVERRULED.  *See* Government MIL 1. |

| | | |
|---|---|---|
| 1 | Exhibit Wong CC: | SUSTAINED.  Hearsay and improper summary under |
| 2 | | Fed. R. Evid. 1006 as the records are not |
| 3 | | "voluminous."  To the extent Defendant seeks to |
| 4 | | introduce credit card or bank records, these must be |
| 5 | | free from annotations and Defendant must lay a |
| 6 | | foundation for admission under Rule 803(6). |
| 7 | Exhibit Wong DD: | OVERRULED.  *See* Government MIL 1. |
| 8 | Exhibit Wong FF: | SUSTAINED.  Hearsay.  Not prior consistent |
| 9 | | statement under Rule 801(d)(1).  No foundation laid |
| 10 | | for Rule 1006 summary evidence. |
| 11 | Exhibit Wong GG: | OVERRULED.  Offered to show Defendant Wong's |
| 12 | | state of mind/intent.  *See* Government MIL 1. |
| 13 | Exhibit Wong KK: | Admissible to extent witness (presumably Richard |
| 14 | | Tanzer) can provide foundation.  Contract is a "verbal |
| 15 | | act" and not hearsay.  *See Kepner-Tregoe, Inc. v.* |
| 16 | | *Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. |
| 17 | | 1994). |
| 18 | Exhibit Wong LL: | Admissible to extent witness (presumably Lynne |
| 19 | | Tingle) can provide foundation.  Contract offer is a |
| 20 | | "verbal act" and not hearsay.  *See United States v.* |
| 21 | | *Stover*, 329 (D.C. Cir. 2003) ("[Verbal acts] are |
| 22 | | limited to statements that have independent legal |
| 23 | | significance, such as contractual offers . . . ."). |
| 24 | Exhibit Yagi 1: | OVERRULED.  *See* Government MIL 3.  Admissible |
| 25 | | provided Defendant Yagi can provide foundation |
| 26 | | under Rule 803(6). |
| 27 | Exhibit Yagi 3: | Admissible assuming Defendant Yagi provides |
| 28 | | custodian to lay proper foundation under Rule 803(6). |

Exhibit Yagi 4:                   SUSTAINED.  Irrelevant.

Exhibit Yagi 5:                   SUSTAINED.  Hearsay.

## IX.    <u>JURY VOIR DIRE</u>

Both parties have submitted proposed questions for voir dire.  (Dkt. No. 104, 119).
The Court intends to begin voir dire by asking the jurors for the following information:

1.    Name

2.    City of Residence

3.    Occupational Status

4.    Educational Background

5.    Organizations

6.    Hobbies

7.    Marital Status

8.    Spouse's Occupation

9.    Children (including ages)

10.    If a Juror on Another Case

11.    If Ever a Grand Juror

12.    If Ever in the Military

In addition, the Court will ask questions 1-5, and 17 on the government's list.  Further, the
Court will ask the following questions:

1.    Do any of you know anyone else on this jury panel?

2.    Have you, any family member, or close friend ever worked for a government
       or law enforcement agency, either local, county, state, or federal?  What
       agency?

3.    You may hear testimony in this case from law enforcement officers and
       government employees; including agents of the Federal Bureau of
       Investigation, which is commonly known as the FBI, and employees of the
       County of San Mateo.  Do you have any opinion regarding law enforcement

officers, or government employees in general, which would prevent you from serving as a fair and impartial juror in this case?

4. Have any of you or your relatives or close friends been a party to any legal action or proceeding (including but not limited to criminal matters) involving the United States, the FBI, or any other federal, state or local government agency? If so,

    a. What was the nature of the action?

    b. Was the matter resolved satisfactorily, in your opinion?

    c. Do you feel the government representatives acted fairly in resolving the matter?

    d. Does this experience cause you to have any feelings or opinions for or against the United States or any local, state, or federal agency in this case?

5. Have you or any relative or close friend ever been a victim of any crime? If so,

    a. What kind of crime was it?

    b. Would that affect your judgment as a juror in this case?

6. Do you belong to any groups taking an advocacy position in an area related to law enforcement or gun control?

7. Have you ever been the administrator or executor of an estate or trust or otherwise served in a fiduciary capacity?

8. Many of the witnesses cases in this case will be present or former government or law enforcement officials. Would you tend to believe a witness who was testifying on behalf of law enforcement or government more than another witness because of that connection with law enforcement or government?

9. Under our Constitution, a defendant is presumed innocent, meaning that the government has to prove that the defendant is guilty beyond a reasonable

doubt, and the defendant has no obligation to testify or put on any evidence. Do you have any difficulty with the fact that defendants in a criminal case (such as Mr. Wong and Ms. Yagi) are not required to testify because the burden of proof rests with the prosecution?

10. Are you comfortable with the rule of law that Mr. Wong and Ms. Yagi are presumed innocent unless and until the prosecution proves them guilty beyond a reasonable doubt?

11. If selected as a juror you will be asked to evaluate the evidence in the case without being influenced in any way by the race or ethnic origin of the defendants, the attorneys, the witnesses, and the government agents? Do you have any reservations whatsoever about your ability to do that?

12. Do you understand that as a juror you must accept and apply the law as it is explained to you by the Court – even if you believe the law is or should be different? Do you have any difficulty with this concept that would prevent you from serving as an impartial juror in this case?

13. You should not speculate about the possible punishment if the defendant is found guilty. While it is natural to wonder what might happen as a result of your verdict, will you be able to perform your duty as a juror without regard to the possible punishment of the defendant if he is found guilty?

14. It is your duty as a juror to listen to the opinions and points of view of the other members of the jury. Would any of you refuse to listen to a fellow juror who disagreed with you?

15. It is also your duty as a juror to express your opinion or point of view regarding the evidence to the other members of the jury. Is there anyone who would be unwilling to speak up and try to persuade other members of the jury who disagreed with your view of the evidence?

16. Have any of you seen or heard anything outside of this courthouse, or in the corridors of this building, or in this courtroom that might have any influence on your verdict in this case?

17. Knowing what you now know about this case, do you have any reservations about your ability to hear the evidence, deliberate and return a fair and impartial verdict?

Each party will be provided additional time (20 minutes) to conduct its own voir dire.

## X.   JURY INSTRUCTIONS & JURY VERDICT FORM

The parties have each submitted proposed jury instructions.  (Docket Nos. 102, 117). The Court shall file shortly hereafter proposed jury instructions.  **The parties shall provide comments on the instructions on a date to be specified**.  On October 18, 2013 by 5:00 p.m., the parties shall submit a list of any stipulated facts to be read to the jury with the initial instructions.

The government and Defendant Wong have filed a proposed verdict forms.  (Dkt. No. 103 118).  Whereas the government proposes a general verdict form, Defendant Wong proposes a special verdict form which would require the jury to indicate which overt acts it has unanimously found that the jury committed.  The Court finds such a special verdict form would be useful in this case to assist the jury.  *See United States v. Matthews*, 505 F.3d 698, 710 (7th Cir. 2007) (recommending that counsel "seriously consider" requesting a special verdict form on the overt acts).  The parties are ordered to meet and confer regarding the form and wording of the verdict form, including the special verdict form as to Count I.  The parties are instructed to file a joint proposed verdict form by Wednesday, October 23, 2013 at 5:00 p.m.

## XI.   CONCLUSION

As discussed above, the Court orders as follows:

• By Friday, October 18, 2013, at 5:00 p.m., the government shall include a list of those uncharged acts/allegedly misappropriated property it intends to use at trial.

This list shall not merely restate government's exhibit list or July 15, 2013 letter. This list shall include (1) a detailed description of the uncharged act/allegedly misappropriated property (including, but not limited to, the estates to which they relate); (2) the precise exhibits (by exhibit numbers) the government intends to use to support this uncharged act; (3) any witnesses who will testify as to the uncharged act/misappropriated property; and (4) for allegedly misappropriated property, a description of where the property was located

• By Monday, October 21, 2013, at 10:00 a.m., the parties The parties shall file a joint statement regarding the status of stipulations in this case. This joint statement shall include: (1) A list of those proposed stipulations offered by the government to which the parties have agreed; (2) The extent to which the parties have stipulated to the authenticity, chain of custody, as well as the condition/location of the physical evidence seized from the Defendants' home or the use of a single "finder" witness to testify as to these facts; (3) The extent to which the stipulations obviate the need for specific witnesses or exhibits. To an extent there are matters to which the parties have not stipulated, the joint statement shall include a detailed statement of the reasons for disputing the matter.

• By Wednesday, October 23, 2013, at 5:00 p.m., the government shall, in light of this Court's ruling on its first motion in limine, file any remaining objections it has to Defendants' prior statement exhibits. Defendants shall file any response by Friday, October 25, 2013, at 12:00 Noon.

• By Wednesday, October 23, 2013, at 5:00 p.m., the government shall file an amended witness list consisting only of those witnesses the government intends to call at trial. Additionally, this list shall provide a detailed proffer of the testimony by the proposed witnesses from the San Mateo County coroner's office.

///

///

///

- By Wednesday, October 23, 2013, at 5:00 p.m., the parties shall file a joint verdict form that includes a special verdict form for Count I.

This order disposes of Docket Nos. 108, 120, 121, and 122.

IT IS SO ORDERED.

Dated:  October 17, 2013

_____
EDWARD M. CHEN
United States District Judge